# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: November 25, 2015

| | | |
|---|---|---|
| * * * * * * * * * * * * * *   * | | PUBLISHED |
| CHEYLYNN TADIO *and* DELTON   * | | |
| THOMAS, *on behalf of their child,*   * | | No. 12-829V |
| K.T., *a minor,*   * | | |
| Petitioners,   * | | |
| v.   * | | |
| SECRETARY OF HEALTH   * | | Attorneys' Fees and Costs; Future |
| AND HUMAN SERVICES,   * | | Costs; Guardianship Costs; |
|    * | | Conservatorship Costs |
| Respondent.   * | | |
| * * * * * * * * * * * * * *   * | | |

Danielle Strait, Maglio Christopher and Toale, PA, Washington, D.C., for petitioner.
Julia W. McInerny, U.S. Department of Justice, Washington, D.C., for respondent.

### RULING GRANTING COSTS FOR MAINTAINING CONSERVATORSHIP[1]

**Gowen**, Special Master:

On July 31, 2015, petitioners filed a Motion for Ruling on Entitlement to Costs for Maintaining Conservatorship. Petitioners have demonstrated that they have incurred such costs in a proceeding on a Vaccine Act petition within the meaning of 42 U.S.C. §300aa-15(e), and are therefore entitled to compensation of the costs of maintaining K.T.'s conservatorship.

I.    **Procedural and Factual History**

On November 30, 2012, Cheylynn Tadio and Delton Thomas ("petitioners") filed a petition for compensation on behalf of their minor child, K.T., under the National Vaccine Injury

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

Compensation Program, 42 U.S.C. §§ 300aa-10 – 34 (2012)[2] (the "Vaccine Act" or "the Program"). Petitioners alleged that as a result of receiving an influenza ("flu") vaccination on November 8, 2010, K.T. developed Guillain-Barre Syndrome ("GBS"). Petition at ¶ 11. The parties filed a stipulation awarding compensation to petitioners on May 30, 2014, and a decision adopting the parties' stipulation was issued the same day. Judgment was entered on June 6, 2014, and petitioners elected to accept the judgment on June 9, 2014. The sum awarded to petitioners included a lump sum of $1,241.15 in the form of a check payable to petitioners for past unreimbursed expenses, and a lump sum of $108,758.85 in the form of a check payable to petitioners "as guardians/conservators of K.T.'s estate." Stip. ¶¶ 8(a), (b). These amounts represented compensation "for all damages that would be available under 42 U.S.C.§ 300aa-15(a)." Id. ¶ 8. The stipulation further conditioned payment to petitioners on their being "duly authorized to serve as guardian(s)/conservator(s) of K.T.'s estate under the laws of the State of Hawaii." Id. at ¶ 13. Hawaii law also independently requires that "[w]hen a minor or incapacitated person receives a settlement or judgment from any claim or action, a conservatorship action must be initiated." Hawaii Probate Rule 101.

Petitioners were appointed co-conservators for K.T.'s vaccine injury award by the State of Hawaii Circuit Court of the Third Circuit on May 19, 2014. See Pet. Ex. 11. On December 3, 2014, petitioners filed an Application for Attorneys' Fees and Costs, which sought, *inter alia*, an award of attorney fees and costs associated with the maintenance of K.T.'s conservatorship in the amount of $41,245.00. Pet. Application for Attorneys' Fees and Costs at ¶ 4. This request was based on the Hawaii state court's Order Granting Petition for Appointment of Conservator, which instructed petitioners, as conservators, to file annual accounts with the court and a petition for discharge when K.T. reaches majority. Pet. Ex. 11 ¶¶ M, P. As of the date petitioners filed their Application for Attorneys' Fees and Costs, this would have included eleven annual reports, for years 2015-2026, and the petition for discharge when K.T. turns 18 in the year 2026.[3] Pet. Application for Attorneys' Fees and Costs at ¶ 4. Petitioners' counsel, Kimberly Jackson, estimated her costs for each annual filing would be $3,600 plus Hawaii's 4.166% excise tax on services. Pet. Ex. 16.

Petitioners filed a Motion for Ruling on Entitlement to Costs for Maintaining Conservatorship on July 31, 2015. In their motion, petitioners request that the court award them "reasonable future costs related to the maintenance and discharge of the conservatorship established as a requirement of K.T.'s vaccine injury award." Pet. Motion at 9. Petitioners state that they anticipate being able to informally resolve attorneys' fees and costs with respondent upon a ruling regarding entitlement to future conservatorship costs. Id. at 2. Respondent filed a response opposing petitioners' motion for a ruling of entitlement on September 18, 2015. On

---

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

[3] As stated below, the Hawaii state court has since issued an order allowing triennial, rather than annual accounting. Pet. Ex. 21 at ¶ F. Petitioners' next accounting is due May, 2018, and it therefore appears that petitioners will be required to file accountings in 2021 and 2024, in addition to the petition for discharge. See id.

September 28, 2015, petitioners filed a reply, as well as additional information that had been provided to petitioners' counsel since the original motion was filed.  This information indicates that the Hawaii state court denied petitioners' request to be allowed to present the accountings without assistance of counsel.  See Pet. Reply at 2; Pet. Ex. 21.  However, rather than the annual accounting initially ordered, the Hawaii state court will allow triennial accounting.  See Pet. Ex. 21 at ¶ F (Order requiring triennial accounting).  Compare Pet. Ex. 11 at ¶ 11 (Order requiring annual accounting).

## II.     Applicable Legal Standards

Petitioners in this case request a ruling that they may be awarded reasonable "future" costs related to maintaining K.T.'s conservatorship under 42 U.S.C. § 300aa-15(e).  Pet. Motion at 9; Pet. Reply at 6.  Respondent does not object to an award of reasonable attorneys' fees and costs associated with establishing petitioners' appointment as co-conservators.  Resp. Opp. at 5.  Therefore, the issue in this case solely concerns whether petitioners are entitled to compensation for costs related to maintaining the conservatorship.

The Vaccine Act provides that petitioners who receive compensation on a petition are entitled to an award of "reasonable attorneys' fees, and other costs, incurred in any proceeding on such petition."  42 U.S.C. § 300aa-15(e)(1).

In recent years, special masters have generally awarded the cost of establishing a guardianship "where the guardianship is established as a condition of the settlement and/or judgment in the matter."  Barrett v. Sec'y of Health & Human Servs., 2014 WL 2505689, *5 (Fed. Cl. Spec. Mstr. May 13, 2014) (citing, e.g., Torres v. Sec'y of Health & Human Servs., WL 2013 2256136, Fed. Cl. Spec. Mstr. Apr. 30, 2013); Ceballos v. Sec'y of Health & Human Servs., 2004 WL 784910 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)).  These cases have held that in circumstances where the existence of a proper guardianship is a prerequisite to payment of the entitlement award, contemplated by the parties before entry of judgment, costs incurred in direct connection with establishing that guardianship are costs incurred in a proceeding on a petition within the meaning of § 300aa-15(e)(1).  Barrett, 2014 WL 2505689 at *5.

As opposed to the cost of establishing a guardianship, two special masters have recently held that "future" costs of maintaining a guardianship are not compensable.  See Barrett, 2014 WL 2505689; Fowler v. Sec'y of Health & Human Servs., 2013 WL 5513880, (Fed. Cl. Spec. Mstr. Sept. 13, 2013).  In these two cases, the special masters interpreted the word "incurred," as used in § 300aa-15(e)(1) narrowly, and denied the requested costs because they had "not yet been incurred in the literal sense of being owed 'at present and were at least in part speculative.'" Barrett, 2014 WL 2505689 at *5 (denying an award of costs petitioner "does not presently owe, [and] may never owe, depending on the future vagaries of life"); Fowler, 2013 WL 5513880, at *1 (denying an award of "purely speculative" costs because the costs had "not been incurred . . . [and] may never be incurred").  The special masters' narrow interpretation of the word "incurred" stemmed from the definition of the word set forth by the United States Court of Federal Claims in Black v. Sec'y of Health & Human Servs., where the court stated that "[o]ne incurs an expense. . . at the moment one becomes legally liable, not at the moment when one pays off the debt, nor at the moment when one decides that an expense will become necessary

one day in the future." Black, 33 Fed. Cl. 546, 550 (Fed. Cl. 1995) (aff'd in relevant part, Black v. Sec'y of Health & Human Servs., 93 F.3d 781, 786 (Fed. Cir. 1996) (citing Quarles Petroleum Co. v. United States, 551 F.2d 1201, 2015 (Ct. Cl. 1977)).

  The question in Black was the meaning of the word "incurred" as it was used in § 11(c)(1)(D)(i) of the Act, a subsection that has since been amended to omit the provision containing the word. See Fester v. Sec'y of Health & Human Servs., 2013 WL 5367670, *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). At the time, that section required that petitioner have "incurred unreimbursable expenses. . . in an amount greater than $1000" in order to be eligible for compensation. See Black, 93 F.3d at 785 (citing 42 U.S.C. § 11(c)(1)(D)). Appellants in Black argued that pursuant to the definition of "incur" found in Webster's Third New International Dictionary 1146 (1968)—"to become liable or subject to"—the injured persons had "incurred" expenses related to their injuries within the meaning of the Act because they faced the "near-certain prospect of ultimately suffering unreimbursable expenses of more than $1000." 93 F.3d at 785. The Federal Circuit, however, held that the term "does not refer to anticipated payments or obligations for which liability has not already attached." Id. at 786. The court held that "to 'incur' expenses means to pay or become liable for them; the term does not refer to any and all expenses that may ultimately be traceable to a particular event." Id.

  In Barrett, petitioner requested attorneys' fees that she anticipated having to pay to fund the guardian's repeated trips to the Pennsylvania state court to file motions for an allowance permitting an annuity disbursement. Barrett, 2014 WL 2505689, at *4-*5. Special Master Corcoran characterized these costs as ones that "Ms. Barrett not only does not presently owe, but may well never owe, depending on the future vagaries of life." Id. at *5. In addition to stating that these costs had not yet been "incurred," as described above, the special master also stated that "[e]qually problematic is Petitioner's failure to establish that the requested costs are necessary—that Pennsylvania law actually requires a guardian to make multiple applications per year to the Orphans' Court in order to fund the care contemplated in Ms. Barrett's entitlement award." Id. at *6. In fact, the special master noted that state law actually suggested that annuity payments can be freely distributed as long as they are intended to pay for the minor's welfare. Id. The special master further noted that the terms of the state court's order establishing the guardianship did not aid petitioner's argument, because it only required the guardian to make annual reports as to its activities, and said nothing about applying for allowances to spend the annuity payments. Id. at *7. As to annual accountings, the special master noted only that the attorneys' cost projections did not appear to include the cost of preparing such reports, that were "a more limited category of costs, but one special masters have denied." Id. (citing Fowler, 2013 WL 5513880).

  Fowler dealt directly with awarding the costs of annual accounting. 2013 WL 5513880. The special master stated that it was "purely speculative for petitioner's Pittsburgh attorney to bill petitioner in advance for ten years of work, estimated at four hours per report of an annual accounting to the court of Common Pleas of Butler County, PA, Orphans' Court Division. Not only has this $10,400.00 cost not been incurred, it may never be incurred." Id. at *1.

  **III. Entitlement to Future Costs for Maintaining K.T.'s Conservatorship**

The present case presents the issue of the compensability of costs that petitioners will need to pay for court required accountings in the future. While other special masters have declined to award speculative "future" costs, the costs requested in this case are distinguishable because their certainty under state law supports the conclusion that petitioners are presently liable for them as the accounting requirement was a condition of the establishment of the conservatorship.

### i. The requested costs are not speculative

The costs requested in the present case are not speculative. Establishment of the guardianship was a pre-requisite to receiving the Vaccine award. The establishment of a guardianship was required by the parties' stipulation, as payment was conditioned on petitioners being "duly authorized to serve as guardian(s)/conservator(s) of K.T.'s estate under the laws of the State of Hawaii." Stip. at ¶ 13. Hawaii law also independently requires that "[w]hen a minor or incapacitated person receives a settlement or judgment from any claim or action, a conservatorship action *must* be initiated." Hawaii Probate Rule 101.

Like the establishment of the guardianship, the requirement for petitioners to file triennial accountings in the present case is also not speculative. The requirement of accountings is a condition of the establishment of the trust. The Hawaii state court Order appointing petitioners as co-conservators initially required petitioners to file annual accounts with the court as well as a petition for discharge upon K.T.'s attaining the age of majority. Pet. Ex. 11 at ¶¶ M, P. The subsequent Hawaii court Order, filed in July, 2015, after petitioners submitted their first accounting, modified the accounting requirement to allow triennial accounts, but denied petitioners' request to allow withdrawal of counsel in order for petitioners to file annual reports without counsel. Pet. Ex. 19; Pet. Ex. 21 at 2.

The filing of a final discharge petition within sixty days of the death of the protected person or attainment of majority by a minor is required by Hawaii statute. H.R.S. § 560:5-431(b). As for accountings, Hawaii statute provides that "[a] conservator shall file a petition for approval of accounts and report to the court for administration of the estate annually unless the court otherwise directs, upon resignation or removal, upon termination of the conservatorship, and at other times as the court directs." H.R.S. § 560:5-420(a).[4] Thus, Hawaii state law independently requires the filing of a petition for discharge, and establishes a default requirement of annual accountings, which the court may modify.

Because of the facts set forth above, the present case is unlike Barrett and Fowler, where the special masters found that the requested costs were speculative. In Barrett, petitioner failed to show that filing for an allowance for an annuity disbursement was required under state law, and the special master in that case noted that the terms of the state court's order establishing the guardianship did not say anything about applying for such allowances. Barrett, 2014 WL 2505689 at *6-7; Fowler, 2013 WL 5513880, at *1 (stating that petitioners' request was "purely speculative"). In contrast, the Hawaii state court orders unequivocally require that triennial

---

[4] The Hawaii court's July 7, 2015 Order indicates that the annual report was submitted pursuant to H.R.S. § 560:5-**402**, rather than 420. This may be a typographical error, as § 560:5-420 deals with the court's jurisdiction whereas § 560:5-402 deals with reporting requirements.

5

accountings be filed, and Hawaii state law requires that a petition for discharge be filed. Pet. Ex. 11 at ¶ P; H.R.S. § 560:5-431(b). Furthermore, petitioners' request that they be allowed to file such accountings without the assistance of counsel was denied, leaving no question that the annual accountings require the payment of attorneys' fees. See Pet. Ex. 21 at ¶ C. There is no question that petitioners will need to pay these costs when their accountings and petition for discharge become due.

        ii.        **The requested costs have been "incurred" within the meaning of 42 U.S.C. § 300aa-15(e)(1)**

Petitioners' expenses in this case have been "incurred," within the meaning of 42 U.S.C. § 300aa-15(e)(1), because petitioners became liable for them under Hawaii law and Hawaii court order at the time that they established the guardianship. In Black, the Federal Circuit held that to "incur" expenses means "to pay *or become liable for them*." 93 F.3d at 786 (emphasis added). The term "incur" refers only to payments or obligations for which liability has already attached. Id. The Court of Federal Claims articulated the standard as follows: "[o]ne incurs an expense. . . at the moment one becomes legally liable, not at the moment when one pays off the debt, nor at the moment when one decides that an expense will become necessary one day in the future." Black, 33 Fed. Cl. 546, 550 (Fed. Cl. 1995) (aff'd in relevant part, Black, 93 F.3d 781 (Fed. Cir. 1996) (citing Quarles Petroleum Co., 551 F.2d at 2015). Based on this language, the special masters in Barrett and Foster found that because of the speculative nature of the requested costs, these costs had not been "incurred" in the sense of being owed at present. Barrett, 2014 WL 2505689 at *5; Fowler, 2013 WL 5513880, at *1.

In the present case, however, petitioners are presently liable for the costs that will need to be paid for the accountings and petition for discharge. As described above, these costs are not speculative—they are certain to occur because petitioners must file the accountings and petition for discharge under Hawaii state court order and Hawaii law, and must do so with representation. These requirements were initially established in the Hawaii court's order establishing the guardianship. The requirement of a petition for discharge is independently required under Hawaii state law, and is therefore not within the discretion of the court to modify. Rather, it is a required cost that petitioners became liable for at the time they established the guardianship. The requirement of accountings is subject to court discretion, but the Hawaii court has specifically ordered petitioners to file triennial accountings in this case.

        iii.       **These costs are costs incurred "in a proceeding on [a] petition" within the meaning of 42 U.S.C. § 300aa-15(e)(1)**

Respondent argues that petitioners have failed to demonstrate that the potential costs would be incurred "in a proceeding on" their Vaccine Act petition, because they are not a condition of K.T.'s award under the stipulation. Resp. Opp. at 5. Respondent cites Torres, where the special master "den[ied] costs incurred establishing a special needs trust because there was no requirement in the stipulation that petitioner create such a trust; accordingly, the costs were not incurred in a proceeding on the petition." Resp. Opp. at 5 (citing Torres v. Sec'y of Health & Human Servs, 2013 WL 2256136 (Fed. Cl. Spec. Mstr. Apr. 30, 2013). Petitioners in Torres claimed that the trust for their son's vaccine injury award was necessary because if the

settlement passed directly to them, their son would become ineligible for Medicaid benefits. Torres, 2013 WL 2256136 at *3. The establishment of a special needs trust is an often desirable financial management tool, but it is not the same as the establishment of a state law mandated conservatorship for a minor. The former is not required for receipt of a vaccine award, the latter is. In Torres, the special master did not award the cost associated with establishing a special needs trust but did award the costs associated with establishment of the guardianship in state court, because obtaining it was a condition precedent to petitioners receiving a vaccine award under the stipulation. Torres, 2013 WL 2256136 at *2.

As the special master explained in Barrett, in cases where the existence of a guardianship is a prerequisite to payment of the entitlement award, such costs have been construed as "proceedings on a petition" and have been compensated. Barrett, 2014 WL 2505689 at *5 (citing, e.g., Torres, WL 2013 2256136; Ceballos, 2004 WL 784910). Indeed, respondent in the present case does not object to the award of reasonable attorneys' fees and costs associated with establishing petitioners' appointment as co-conservators. The requested cost of establishing a special needs trust as in Torres is not like the present case, where the costs petitioners seek are directly required in relation to the establishment of the guardianship. Whereas the special needs trust in Torres was wholly unrelated to the establishment of the guardianship, the costs requested in the present case are associated with establishing the guardianship itself—they were set forth in the Hawaii court's order appointing petitioners as co-conservators—and are therefore inextricably associated with the court's approval of the guardianship to begin with, which in turn is a condition precedent to petitioners receipt of K.T.'s vaccine injury award.

### iv.   The costs per accounting can be reduced to a definite, flat rate

In Fowler, the special master stated that it was "purely speculative for petitioner's Pittsburgh attorney to bill petitioner in advance for ten years of work, estimated at four hours per report of an annual accounting to the court of Common Pleas of Butler County, PA, Orphans' Court Division. Not only has this $10,400.00 cost not been incurred, it may never be incurred." Fowler, 2013 WL 5513880, at *1. Along similar lines, respondent in the present case states that "[p]etitioners' guardianship attorney acknowledged that the costs provided are nothing more than estimates based on vagaries such as general scheduling preferences of a judge, logistics of communicating with the court, court location, potential traffic and travel distances, and overall difficulties of practicing law in Hawaii." Resp. Opp. at 4 (citing Pet. Ex. 16). To the extent that respondent, consistent with the view of the special master in Fowler, objects to a fee estimate based on hourly rates and other "vagaries," this objection can be addressed by awarding a flat fee for service for each accounting so as to eliminate variability and estimation of the costs.

Petitioners' counsel, Kimberly Jackson, estimated her costs for each annual filing would be $3,600 plus Hawaii's 4.166% excise tax on services. Pet. Ex. 16. Rather than award compensation based on an hourly rate that may be subject to variation depending on unpredictable circumstances, the undersigned finds that a flat fee for service rate of $2,000.00 per filing is reasonable. Awarding the requested costs for filing accountings and a petition for discharge at a flat rate eliminates the uncertainty involved in calculating future "estimated" hours, and addresses respondent's assertion that petitioner is requesting that the undersigned create a "contingency" fund. See Resp. Opp. at 6. The costs of filing three accountings, in 2018,

2021, and 2024, as well as a petition for discharge in 2026, are required as a condition to the existence of K.T.'s guardianship, and when compensated at a flat rate per filing, can be calculated with certainty.

### IV.     Conclusion

The costs of maintaining K.T.'s conservatorship are compensable. They are not speculative, as they were clearly required by order of the Hawaii state court at the time the guardianship was established, a petition for discharge is required under state statute, and representation is require pursuant to court order. Petitioners became liable for these costs as of the time the guardianship was established, and the costs have therefore been "incurred" within the meaning of 42 U.S.C. § 300aa-15(e)(1). Furthermore, because these costs are directly associated with the establishment of the guardianship required as a condition precedent to receiving K.T.'s vaccine award, they are incurred in connection with a "proceeding on [a] petition," just as the establishment of the guardianship itself is. When awarded as a reasonable flat rate per required filing, the amount requested is definite and certain.

Petitioners' motion for a ruling that they are entitled to an award of the costs related to maintaining K.T.'s conservatorship is **GRANTED**. At a rate of $2,000 per required filing, for three triennial accountings and a petition for discharge once K.T. reaches the age of majority, the undersigned finds that petitioners are entitled to an award of $8,000 to for the costs associated with maintaining K.T.'s conservatorship.

**IT IS SO ORDERED.**

s/Thomas L. Gowen
Thomas L. Gowen
Special Master